# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Alexandria Division

| | |
|---|---|
| ANTON DURRELL HARRIS, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Respondent. ) <br> ) | Civil Action No. 1:19-cv-755 (TSE) <br> Criminal Action No. 1:17-cr-106 (TSE) |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Petitioner Anton Durrell Harris' ("Harris") Motion to Stay Statute of Limitations Due to Exigent Circumstances (Dkt. 254) ("Mot. to Stay"). Relatedly, Harris also has filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Dkt. 252) ("Mot. to Vacate") and a Motion to Dismiss or Withdraw Without Prejudice to Refile Motion to Vacate (Dkt. 253) ("Mot. to Withdraw"). On June 11, 2019, the District Judge referred this matter to the undersigned. (Dkt. 256.) On June 20, 2019, the Government filed a Response in Opposition to Harris' Motion to Stay Statute of Limitations (Dkt. 258) ("Gov't Opp'n").

For the following reasons, the Court finds that Harris' Motion to Stay Statute of Limitations be GRANTED IN PART and DENIED IN PART and that Harris' Motion to Dismiss or Withdraw be held in ABEYANCE.

## I. PROCEDURAL AND FACTUAL BACKGROUND

On May 18, 2017, a federal grand jury returned a forty-one (41) count indictment charging Harris, along with three other individuals, for participating in multiple armed robberies. (Dkt. 18.)

Specifically, Harris was charged with seventeen counts, consisting of one (1) count of conspiracy to obstruct commerce by robbery, six (6) counts of obstructing commerce by robbery, six (6) counts of using, carrying, and brandishing a firearm during and in relation to a crime of violence, and four (4) counts of possessing a firearm after having been convicted of a felony. (*Id.*) Harris initially pleaded not guilty as to all seventeen counts at his arraignment and demanded a jury trial. (Dkt. 28.)

On January 16, 2018, on the eve of trial, Harris appeared before the District Judge for a change of plea. (Dkt. 146.) Pursuant to a plea agreement with the United States, Harris pleaded guilty to Counts 27 and 28 of the indictment. (*Id.*; Dkt. 147 at 1.) Both counts charged Harris with using, carrying, and brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c) and 2. (Dkt. 147 at 1.)

On May 31, 2018, Harris again appeared before the District Judge for sentencing. (Dkt. 211.) The District Judge sentenced Harris to 384 months of imprisonment. (*Id.*) The Court entered Harris' judgment of conviction on that same day. (Dkt. 214.) Harris did not commence a direct appeal of his conviction.

More than a year later, on June 6, 2019, the Clerk of the Court docketed three separate motions filed by Harris. However, those filings all include different signature dates as well as postmarks.

First, Harris filed a Motion to Vacate under 28 U.S.C. § 2255 for ineffective assistance of counsel. The motion is signed and dated as of May 1, 2019. (Mot. to Vacate at 9.) While not quite legible, the envelope accompanying the motion appears to have been postmarked on May 2, 2019. (Mot. to Vacate, Ex. 1.)

Second, Harris filed a Motion to Dismiss or Withdraw Without Prejudice to Refile Motion to Vacate. Harris also signed this motion but did not specifically include a date near his signature line. (Mot. to Withdraw at 3.) Nonetheless, Harris did include a "Certificate of Service" section that states he served the motion upon the Clerk on May 22, 2019 by placing the motion in the possession of a corrections officer. (*Id.*) The envelope includes a clearly legible postmark of May 24, 2019. (*Id.*, Ex. 1 at 1.) Moreover, this filing also includes a certification from the United States Penitentiary in Pollock, Louisiana ("USP Pollock"), where Harris is currently incarcerated, stating Harris' letter "was processed through special mailing procedures" on May 24, 2019. (*Id.*, Ex. 1 at 2.)

Third and finally, Harris filed a Motion to Stay Statute of Limitations Due to Exigent Circumstances. Again, the motion includes Harris' signature without a corresponding date but does include a certificate of service stating the motion was served on the Clerk via a corrections officer on May 24, 2019. (Mot. to Stay at 4.) That filing also includes a "Notice of Grounds for Relief Motion Under 28 U.S.C. § 2255 for Preservation Purposes," which includes a certificate of service stating Harris served the "Notice of Grounds" on the Clerk via a corrections officer on May 24, 2019. (*Id.* at 7.) Additionally, the filing contains a separate affidavit and certificate of service. (*Id.* at 9-10.) On the face of the affidavit, Harris states he served it on May 1, 2019. (*Id.* at 9.) On the following certificate of service, Harris swears under the penalty of perjury that he served his 2255 motion for ineffective counsel on the Clerk on May 1, 2019. (*Id.* at 10.) This filing includes a legible postmark of May 28, 2019 and another "special mailing procedures" certificate from USP Pollock stating the letter was processed on May 28, 2019. (*Id.*, Ex. 1.)

## II. ANALYSIS

With 28 U.S.C. § 2255(f)(1)'s one-year limitation fast approaching, Harris filed a slew of motions with this Court, including a 2255 Motion to Vacate. Harris' 2255 Motion mainly appears to request that the Court "reverse" his conviction on the grounds of ineffective assistance of counsel. (Mot. to Vacate at 1, 9.) Before reaching the merits of Harris' claims, however, the Court must necessarily address the timeliness of Harris' 2255 motion as well as Harris' other motions.

### A. Timeliness of Harris' Motion

Although the Government concedes that Harris' 2255 motion is timely (Gov't Opp'n at 3, 3 n.1), the Court will nonetheless independently determine the timeliness of Harris' motion. Pursuant to 28 U.S.C. § 2255(f)(1), the statute of limitations period for a prisoner to file a habeas petition is one year from "the date on which the judgment of conviction becomes final." While some disagreement exists among courts in the Fourth Circuit regarding when a conviction becomes final for purposes of § 2255(f)(1)'s limitations period, the Court will follow the Fourth Circuit's decision in *United States v. Sanders*.[1] In *Sanders*, the Fourth Circuit held that when a petitioner declines to file a direct appeal, the conviction becomes final on the date the district court entered the judgment of conviction. 247 F.3d 139, 142 (4th Cir. 2001). Therefore, because Harris did not file a direct appeal, the deadline to file his 2255 motion was May 31, 2019.

---

1. The Court is aware of the Supreme Court's decision in *Clay v. United States*, 537 U.S. 522 (2003). In that case, the Court appeared to change the law when it held that "for federal criminal defendants who do not file a petition for certiorari with [the Supreme] Court on direct review, § 2255's one-year limitation period starts to run when the time for seeking such review expires." *Id.* at 532. *Clay* seemingly stands for the proposition that a judgment of conviction becomes final fourteen (14) days after being entered when a petitioner declines to commence a direct appeal. *See* Fed. R. App. P. 4(b)(1)(A)(i). Courts in this Circuit, including the Fourth Circuit in unpublished decisions, have since adopted *Clay*'s approach. *See, e.g., United States v. Diallo*, 581 F. App'x 226, 227 (4th Cir. 2014) (per curiam) (applying *Clay*'s timeline); *Miserendino v. United States*, 307 F. Supp. 3d 480, 484 (E.D. Va. 2018) (same).

However, other courts in this Circuit, including the Fourth Circuit itself, also continue to apply *Sanders*' timeline for purposes of calculating 2255's limitation period. *See, e.g., United States v. Brown*, 596 F. App'x 209, 211 (4th Cir. 2015) (per curiam); *Hannigan v. United States*, 131 F. Supp. 3d 480, 484 (E.D.N.C. 2015). Accordingly, because "the Fourth Circuit has not yet overruled *Sanders* and because it has inconsistently applied *Clay* and *Sanders*, this court follows *Sanders*." *Hannigan*, 131 F. Supp. 3d at 484 n.1.

4

In most circumstances, a submission with the Court is not deemed filed until the Clerk receives the submission, not when the party places it in the mail. *See, e.g., Allen v. City of Fredericksburg*, Civil Action No. 3:09CV63, 2011 WL 782039, at *6 (E.D. Va. Feb. 22, 2011) ("[A] complaint is filed 'when the clerk receives the complaint.'" (quoting *Robinson v. Doe*, 272 F.3d 921, 922-23 (7th Cir. 2001))). As noted, the Clerk did not file Harris' 2255 motion on the docket until June 6, 2019. The accompanying envelope includes a stamp from the Clerk of the Court, indicating when the motion was received in the mailroom. Unfortunately, although the stamp made a clearly legible mark for the day (6th) and year (2019), the month is completely illegible. Therefore, a slight possibility exists that the Clerk did not receive the motion until June 6, 2019 and then immediately filed the motion on the docket. If that is in fact the case, Harris' motion would be untimely under *Sanders*.

However, Harris may be entitled to benefit from the prison mailbox rule. In *Houston v. Lack*, the Supreme Court articulated the prison mailbox rule, holding that a *pro se* prisoner's legal papers are deemed filed upon "delivery to prison authorities, not receipt by the clerk." 487 U.S. 266, 275 (1988). The Federal Rules Governing 28 U.S.C. § 2255 later codified *Houston*'s promulgation of the prison mailbox rule, stating:

> A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing. If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

Fed. R. Gov. § 2255 Proc. 3(d). The rule helps "protect[] against potential mishandling or delay by prison staff and others, whether intentional or unintentional." *United States v. McNeill*, 523 F. App'x 979, 981 (4th Cir. 2013).

Here, Harris' 2255 motion does not include a declaration or a notarized statement specifying the date he deposited the motion in the prison internal mailing system. Nonetheless, the motion is signed and dated as of May 1, 2019, and the postmark on the accompanying envelope appears to be May 2, 2019. Moreover, Harris did include a declaration that complies with 28 U.S.C. § 1746 and Rule 3(d) with his Motion to Stay Statute of Limitations, stating that he served his 2255 motion on May 1, 2019. Therefore, taking the facts in their totality—the motion's date, the envelope's postmark, the illegible clerk's stamp of receipt, the later-filed declaration, and the Government's lack of an objection—convinces the Court that Harris should receive the benefits of the prison mailbox rule. Accordingly, the Court finds that Harris timely filed his 2255 motion.

B. Request to Stay Statute of Limitations

Harris requests that the Court stay 2255(f)(1)'s statute of limitations until USP Pollock ends its current lockdown and returns to normal operations. (Mot. to Stay at 1, 4.) The Government opposes such a request, contending that this Court lacks jurisdiction to resolve the matter. (Gov't Opp'n at 3-4.) The undersigned disagrees with the Government's view.

Although Harris uses the term "equitable tolling" in his motion, (Mot. to Stay at 3), the undersigned does not understand Harris as seeking such a drastic form of relief. Instead, it appears more likely that Harris is merely seeking to file an amended 2255 motion outside the statute of limitations. *See Jehovah v. Clarke*, 798 F.3d 169, 176 (4th Cir. 2015) (*pro se* pleadings must be liberally construed). Much of Harris' Motion to Stay (and Motion to Withdraw) focuses on his failure to file his initial 2255 motion on the proper *pro se* form. (Mot. to Stay at 2, 4, 6; Mot. to Withdraw at 1-2, 4.) To the extent Harris merely wants to incorporate all or some of his allegations from his initial 2255 motion onto the standard *pro se* form, that is of course proper in this instance. In fact, the Local Rules of this Court require that all *pro se* petitions for writs of habeas corpora be

filed on a set of standardized forms. *See* E.D. Va. L. Civ. R. 83.4(A); *Edwards v. United States*, Civil Action No. 3:12-cv-582, (E.D. Va. Sept. 24, 2013) (memorandum order requiring *pro se* petitioner to file an amended 2255 petition on standardized forms). Certainly, the Court possesses jurisdiction to grant such a request.

Moreover, Harris references requiring additional time to clarify the claims alleged in his initial motion and prepare a memorandum in support. (Mot. to Stay at 6.) The Court does not find this request to be inappropriate. Because the rules governing § 2255 proceedings do not provide for a procedure for amending motions, "courts have typically applied Federal Rule of Civil Procedure 15 to the amendment of a § 2255 motion." *United States v. Pittman*, 209 F.3d 314, 316-17 (4th Cir. 2000). Pursuant to Rule 15(a), a party may amend their pleadings once as a matter of course before a responsive pleading is served or by leave of court. Fed. R. Civ. P. 15(a). Furthermore, "leave to amend [under Rule 15(a)] shall be given freely, absent bad faith, undue prejudice to the opposing party, or futility of amendment." *Pittman*, 209 F.3d at 317 (citations omitted).

"When proposed claims in an amendment are barred by the statute of limitations, Rule 15(c) provides for the relation back of amendments to the original pleading under certain circumstances." *Id.* In other words, additional claims will be allowed when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth ... in the original pleading." *Id.* (quoting Fed. R. Civ. P. 15(c)(2)). Rule 15(c)'s standard is narrower, however, in the context of 2255 motions, as an amended motion will "not relate back (and thereby escape [§2255(f)'s] one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005).

7

Harris asserts several claims in his initial 2255 motion, all of which seemingly derive from Harris' dissatisfaction with the form and substance of the plea he entered in this case. In this regard, the initial 2255 motion specifically requests relief on the grounds of ineffective assistance of counsel. (Mot. to Vacate at 1, 9.) In his Motion to Stay, Harris includes a "Notice of Grounds for Relief," in which he states he intends to raise two grounds for relief in an amended 2255 motion: one claim of ineffective assistance of counsel during the plea bargaining negotiations and agreement process and one claim of ineffective assistance of counsel during the sentencing phase. (Mot. to Stay at 5.) While not a completely lucid document, the initial 2255 motion does provide some factual basis for Harris' claims of ineffective assistance of counsel. Given that Harris timely filed a 2255 motion articulating some grounds for potential relief, the undersigned believes Harris should be granted leave to file an amended motion so long as the amended claims arise out of the same conduct and facts alleged in the initial motion.[2] *See United States v. Tucker*, No. 3:09-CR-298-HEH, 2015 WL 1649123, at *9 (E.D. Va. Apr. 13, 2015).

Finally, to the extent Harris is requesting a tolling of the statute of limitations, the Court finds that it does have jurisdiction to decide the motion on the merits. Therefore, having jurisdiction, the Court will deny Harris' request. For a court to have jurisdiction over a motion to extend time to file a 2255 motion, it must "either (i) be filed concurrently with or *after a § 2255 petition*, or (ii) be construed as the § 2255 petition itself." *Ramirez v. United States*, 461 F. Supp. 2d 439, 441 (E.D. Va. 2006) (emphasis added). In *Green v. United States*, the Second Circuit announced a similar standard, holding that "a district court may grant an extension of time to file a motion pursuant to section 2255 only if the moving party requests the extension upon or after filing an actual section 2255 motion." 260 F.3d 78, 82 (2d Cir. 2001). However, if a Court does

---

2. Upon Harris filing an amended 2255 motion, the Government may of course object to any claim alleged that it believes does not satisfy Rule 15's relation-back requirement.

have jurisdiction, it may only grant a motion for extension if "'rare and exceptional' circumstances warrant equitably tolling the limitations period." *Id.* at 83.

Here, Harris satisfies the standard for jurisdiction laid out in *Ramirez* and *Green*. As discussed, Harris timely filed a 2255 motion in early May. Harris did not file his Motion to Stay until May 28, 2019, several weeks after he timely filed his 2255 motion. Nothing in *Green* and *Ramirez* indicate that a 2255 motion must be untimely in order for the Court to contemplate granting an extension. Those cases involved petitioners who had not yet even filed a 2255 motion, let alone an untimely one. Instead, the Court understands those cases as only requiring the commencement of some form of a 2255 proceeding before the Court may consider extending the one year statute of limitations. Additionally, other courts facing similar motions for an extension have held that they do possess jurisdiction to rule even though an amended, untimely motion may still be forthcoming. *See, e.g., Gonzalez v. United States*, No. 15-cv-8831, 2018 WL 5023941, at *4 (S.D.N.Y. Oct. 17, 2018) (finding court possessed jurisdiction when it granted petitioner's request for an extension to file supplemental 2255 papers beyond the statute of limitations period because petitioner had already filed an "actual § 2255 petition"); *United States v. Humbert*, Criminal No. 04-506-1, 2010 WL 4665960, at *2 (E.D. Pa. Nov. 17, 2010) (denying petitioner's motion for an extension of time to file a 2255 motion on the merits despite being filed prior to the expiration of the statute of limitations because the motion included an actual petition); *cf. Anderson v. Pa. Attorney Gen.*, 82 F. App'x 745, 749 (3d Cir. 2003) (concluding district court had "jurisdiction to rule on [petitioner's] motion for an extension of time" even though the allegations in his motion fell "short of stating a claim for habeas relief"). Therefore, because Harris timely filed a 2255 motion, the Court may properly rule on Harris' Motion to Stay.

Although properly invoking the Court's jurisdiction, Harris fails to demonstrate his entitlement to equitable tolling. While a court may equitably toll 2255's statute of limitations, *see United States v. Prescott*, 221 F.3d 686, 688 (4th Cir. 2000) (applying equitable tolling to § 2255 motion), the Fourth Circuit cautions that "any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). Therefore, instances in which equitable tolling will be permitted should be few and far between. In order to be entitled to equitable tolling, a petitioner must demonstrate "(1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc).

In his motion to stay the statute of limitations, Harris' only proffered basis for tolling the statute of limitations is that USP Pollock has undergone multiple extended lockdowns over the past year. (Mot. to Stay at 1-2, ¶¶ 4-8.) Harris contends that these "continuous lockdowns have impeded [his] ability to prepare and present a motion under 28 U.S.C. § 2255" as he lacks access to his legal work as well as legal materials. (*Id.* at 2, ¶¶ 7-8.)

Lockdowns are often an insufficient basis upon which courts may equitably toll 2255's statute of limitations. As numerous courts have held, lockdowns and/or restricted access to legal assistance or materials do not qualify as extraordinary circumstances. *See, e.g., Allen v. Johnson*, 602 F. Supp. 2d 724, 727-28 ("[T]ransfers between prison facilities, solitary confinement, lockdowns, restricted access to the law library and an inability to secure court documents do not qualify as extraordinary circumstances." (quoting *Warren v. Kelly*, 207 F. Supp. 2d 6, 10 (E.D.N.Y. 2002))).[3] Accordingly, Harris is not entitled to equitable tolling.

---

3. *See also, e.g., Tucker v. Kingston*, 538 F.3d 732, 734-35 (7th Cir. 2008) (lack of legal expertise and limited access to prison law library are not grounds for equitable tolling); *Dodd v. United States*, 365 F.3d 1273, 1282-83 (11th Cir.

10

## III. ORDER

Therefore, for the reasons stated herein, it is hereby

ORDERED THAT Harris' Motion to Stay Statute of Limitations (Dkt. 254) shall be GRANTED IN PART insofar as Harris may file an amended 2255 motion with claims that properly relate back to his initial motion. Harris' Motion is DENIED in all other respects. Harris shall have **sixty (60) days** from the date of this Order to file an amended 2255 motion. It is further

ORDERED that Harris' Motion to Withdraw Without Prejudice (Dkt. 253) be held in ABEYANCE pending Harris filing an amended motion.

The Clerk is directed to send a copy of this Memorandum Opinion and Order as well as the proper 28 U.S.C. § 2255 *pro se* form to Anton Durrell Harris at the address below:

Anton Durrell Harris
Prisoner No. 81450-083
U.S. Penitentiary Pollock
P.O. Box 2099
Pollock, Louisiana 71467

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

July 17, 2019
Alexandria, Virginia

---

2004) (transfers, lockdowns, or misplacement of legal papers not grounds for equitable tolling); *Provost v. Clarke*, Civil Action No. 3:18CV132, 2018 WL 6681206, at *5 (E.D. Va. Dec. 19, 2018) (holding that "absence of legal assistance [or access to legal library materials] is not an extraordinary circumstance.").